UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

| | |
|---|---|
| PATRICK SULLIVAN and<br>MARIE SULLIVAN and<br>ALAN E. FISCHER, III<br>individually and on behalf of all<br>others similarly situated, | Case No.: |
| Plaintiffs, | JURY TRIAL REQUESTED |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |
| _____/ | |

## CLASS ACTION COMPLAINT

Plaintiffs, Patrick Sullivan and Marie Sullivan and Alan E. Fischer, III, by and through undersigned counsel, bring this action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, and allege as follows:

## *INTRODUCTION*

1. This case is about the United States Capitol Police (the "Capitol Police") and the Metropolitan Police of the District of Columbia ("MPD") indiscriminately shooting chemical munitions and pepper spray into a crowd of thousands of people at the United States Capitol on January 6, 2021. The people hit by the chemical munitions and exposed to pepper spray, "O.C." gas and CS Gas were injured. The police also used Billy Clubs, including strikes to the head, and other means of excessive force that caused injury to the plaintiffs and class members.

1

2.     This is a Federal Tort Claims Act ("FTCA") class action seeking money damages for injuries caused when the police indiscriminately launched explosive munitions, chemical agents, and impact projectiles into a peaceful crowd and physically assaulted members of the crowd that was assembled on the west side outdoor terrace and grounds of the United States Capitol on January 6, 2021.

3.     The law enforcement officers were the Capitol Police and MPD who were on the Capitol grounds at the request of the Capitol Police. At all times relevant, the MPD officers were under the direction and control of the Capitol Police. The MPD assisted as borrowed servants and the United States is vicariously liable for the actions of the MPD. (*herein, when applicable,* the United States Capitol Police and the Metropolitan Police of the District of Columbia will be jointly referred to as simply "the police.").

4.     The actions of the police caused physical and emotional injuries, including but not limited to chemical burns, concussive trauma, emotional distress, and other damages to plaintiffs, class members and thousands of other protesters.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1346(b)(1), which grants district courts exclusive jurisdiction over civil actions for money damages against the United States for: "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a).

6.     Plaintiffs bring this action pursuant to 28 U.S.C. §§ 2671–2680, under which the defendant has waived sovereign immunity for torts committed by federal law enforcement officers, including assault, under § 2680(h).

7.      Plaintiffs timely filed administrative claims (Standard Form 95) with the appropriate federal agency, and more than six months have passed without a final disposition, satisfying 28 U.S.C. § 2675(a).

8.      Venue is proper in the United States District Court, Middle District of Florida, Ocala Division, under 28 U.S.C. § 1402(b) because plaintiffs Patrick Sullivan and Marie Sullivan reside in Citrus County, Florida, and they seek money damages for personal injuries. Plaintiff Alan E. Fischer III also resides within the geographical area for the Middle District of Florida. Fischer also seeks money damages for personal injuries.

## *THE PARTIES*

9.      Plaintiffs Patrick Sullivan and Marie Sullivan and Alan E. Fischer, III were physically present on the west terrace/west plaza of the U.S. Capitol building on January 6, 2021. Plaintiffs Patrick Sullivan and Marie Sullivan were exposed to pepper spray ("O.C." gas) and suffered injuries typical of that kind of toxin exposure. Fischer was on the west side of the U.S. Capitol building and was struck in the face and injured with a pepper ball. Later, he was exposed to pepper spray, O.C. gas launched by the police and suffered injuries typical of that kind of toxin exposure.

10.     Defendant United States of America is the proper defendant in an FTCA action and is liable for certain tortious acts of its employees, including the Capitol Police who sprayed and assaulted the protesters on January 6, 2021. All of the police officers present at or near the west side of the U.S. Capitol building were acting within the course and scope of their employment and under the authority of the United States.

11.     Additionally, the police officers of the MPD who were at the U.S. Capitol building on January 6, 2021 were requested by the United States to assist the Capitol Police and to

3

serve that day under the direction, supervision and control of the Capitol Police. As such the MPD officers served the United States as borrowed servants. The actions of the MPD officers as alleged herein were done within the course and scope of their employment and under the authority of the United States. The actions of the MPD officers were done within the course and scope of their status as borrowed servants. The United States is vicariously liable for the actions of the MPD as alleged herein.

## *GENERAL FACTUAL ALLEGATIONS*

12.    On January 6, 2021, the plaintiffs and class members gathered on the west side of the U.S. Capitol building in Washington, D.C. to exercise their First Amendment Rights to protest the opening, reading and counting of the Electoral College votes for the 2020 presidential election between Donald J. Trump and Joseph R. Biden. There was a crowd of well over 1,000 protesters on the west side.

13.    The Capitol Police were outside the west side of the U.S. Capitol securing the premises and were being assisted on the U.S. Capitol building grounds by members of the MPD.

14.    At approximately 1:06 p.m. on January 6, 2021, the police started to indiscriminately launch explosive munitions into the crowd that included: (1) pepper balls, which are small rubber balls filled with a synthetic hot-pepper-like substance called Oleoresin Capsicum ("O.C."); (2) FM303 projectiles which also contain O.C. and have striations that make the projectile bullet spin for more accuracy; (3) pepper spray from canisters that project a stream from 10 to 15 feet; (4) sting-ball grenades, which are rubber balls about the size of a softball that have a pin to pull after which an internal CO2 cartridge explodes spraying out rubber pellets, some solid and others filled with O.C.; (5) MK46

4

pepper spray containers, which are similar to a fire extinguishers that spray O.C. to a distance of 25 to 30 feet; (6) flash-bang grenades which the police threw in the air and which caused at least one of the protesters to catch on fire; (7) O.C. smoke grenades which mix O.C. and smoke to keep the O.C. droplets airborne 2 to 3 times longer than the O.C. chemical stays in the air by itself; (8) Blue Tip, exact impact heavy duty 40 mm sponge rounds; (9) a "Triple Chaser" which is a hand tossed container that bursts into three pieces each of which spews 2-chlorobenzalmalononitrile, a much stronger chemical than the O.C. (commonly called "CS Gas" or tear gas).  The police officers used 40 mm grenade launchers to fire muzzle blast munitions which flew into the faces of the demonstrators.  The 40 mm grenade launchers were also used to fire tear gas and other projectiles into the middle of the demonstration, affecting peaceful, praying citizens exercising their First Amendment rights.

15.     The crowd was composed of protesters who were overwhelmingly peaceful before the shooting by police started. They were assembled on the grounds not engaging in violence. A small group of protesters were up along a temporary bike fence line and pushing several officers. No one intentionally harmed any officers. The munitions launched into the crowd were not directed at any of the people who were pushing on the fence line. Instead, the police were shooting indiscriminately into the crowd further back in an area with peaceful protesters.

16.     The police never gave any of the crowd any warnings before shooting. Under District of Columbia law, before the police can use force against protesters they must give the crowd three verbal warnings. District of Columbia First Amendment Assemblies Act,

D.C. Code § 5-331-07 ("FAAA"). No verbal warnings or any warnings were given to the crowd of protesters.

17.     The indiscriminate shooting of munitions into the crowd went on for well over an hour. The police admitted on video an hour after the shooting started that the munitions being shot into the crowd were "hitting ***innocent*** people."  (*emphasis added*).

## *CLASS ALLEGATIONS*

18.     Plaintiffs bring this action on behalf of themselves individually and as purported class representatives under Fed. R. Civ. P. 23(b)(3). The proposed group of people on whose behalf the plaintiffs bring this action are:

> All persons who were on the west terrace, west plaza, west steps and/or west lawn of the U.S. Capitol building on January 6, 2021 who were struck by weapons or exposed to chemicals launched or thrown or weapons used by law enforcement personnel or struck directly by law enforcement personnel.

19.     The class is numerous, consisting of hundreds or potentially thousands of individuals. Joinder is impracticable. For case management purposes, the class members can be broken down presently into three groups, based upon their submission of FTCA Forms 95 to the U.S. Capitol Police. The aggregate total dollars claimed in their Forms 95 by the named class members (Groups One and Two below) is $18,405,000.00.

20.     **Group One.** The following class members have submitted Forms 95 pursuant to the FTCA and more than six months have passed without a final disposition, satisfying 28 U.S.C. § 2675(a).

|   |   |   |
|---|---|---|
| 1 | Benjamen S. Burlew | |
| 2 | Eric Clark | |
| 3 | Phillip M. Crawford Jr | |
| 4 | Joshua Dale | |
| 5 | David Davis | |
| 6 | Mary DeWolfe | |
| 7 | Troy Faulkner | |
| 8 | Alan E. Fischer III | |
| 9 | Joseph R. Fisher | |
| 10 | Kathie Heering | |
| 11 | Jon Heneghan | |
| 12 | Kari Hoffman | |
| 13 | Luciana Hoffman | |
| 14 | Luke Hoffman | |
| 15 | Annie Howell | |
| 16 | Andrew P. Johnson | |
| 17 | Debra Maimone | |
| 18 | Leslie Mcgrew | |
| 19 | Michael Oliveras | |
| 20 | Ronald Palentchar | |
| 21 | Joseph Pavlik | |
| 22 | Dominic Pezzola | |
| 23 | Mark Roger Rebegila | |
| 24 | Howard C. Richardson | |
| 25 | Daniel Shaw | |
| 26 | Michelle Stauder | |
| 27 | Marie Sullivan | |
| 28 | Patrick Sullivan | |
| 29 | Chance Uptmore | |
| 30 | Annie Vo | |
| 31 | Philip C. Vogel II | |
| 32 | Deborah Wagner | |
| 33 | Michelle Weller | |
| 34 | Peter J. Willey Jr | |
| 35 | Christopher J. Worrell | |

7

21.    **Group Two.** The following class members have submitted Forms 95 pursuant to the FTCA but the six month waiting period before satisfying 28 U.S.C. § 2675(a), has yet to pass. Their respective six month waiting period(s) are anticipated to pass before trial of this action and before a class member definition is set by the Court.

| | | |
|---|---|---|
| 1 | Sherry Arnold | |
| 2 | Craig Bingert | |
| 3 | Tammy Butry (Bronsburg) | |
| 4 | David Camden | |
| 5 | Curtis Davis | |
| 6 | Anthime Gionet | |
| 7 | Sarah Holmes | |
| 8 | Shane Jenkins | |
| 9 | Ken Rader, II | |
| 10 | Kenneth Reda | |
| 11 | Tyler Slacker | |

22.    **Group Three.** In addition to the forty-six class members named above, there are many others who meet the proposed class membership definition but have not submitted Forms 95.  The plaintiffs contend that in the instance of this matter, FTCA Forms 95 are not required of all class members. The class representatives have satisfied the Form 95 requirement. More importantly, the Forms 95 that were submitted by plaintiffs and the others have been completely ignored by the United States of America. Therefore in this instance, the requirement that Forms 95 would have been otherwise needed for class members is the requirement of a futile act and thus, the formality of Forms 95 is not a legal necessity for any members of the class. The law does not require futile acts.

23.    Common questions of law and fact predominate, including the following:

   a. **Uniform Use of Force and Shared Factual Circumstances:** All class members were subjected to the same attack, at the same time and place, involving the same or similar weapons, munitions, tactics, and methods of engagement (albeit chaotic).

8

b. **Centralized Planning, Authorization, and Command Structure:** The same governmental actors planned, authorized, oversaw, and executed the use of force, under a unified command hierarchy (albeit chaotic).

c. **Common Constitutional Questions:** All class members possessed the same First Amendment rights to assemble, speak, and petition the government, and the same conduct justified their presence and allegedly violated those rights.

d. **Adequacy of Warnings and Dispersal Opportunities:** Whether officers adequately informed protesters that they must disperse and whether class members were given a meaningful opportunity to comply before force was used.

e. **Legality and Reasonableness of Defendants' Justifications:** Whether the defendant's stated reason(s) for deploying force were uniform across the class and whether those justifications were reasonable under the circumstances.

f. **Intent and Mental State Behind the Use of Force:** Whether force was deployed with impermissible intent—such as intent to cause harmful or offensive contact or to place protesters in apprehension of imminent harm.

g. **Government Planning Failures and Deliberate Indifference:** Whether the lack of adequate staffing or crowd control planning demonstrates negligence, deliberate or reckless indifference to protesters' constitutional rights and to officers' ability to protect the U.S. Capitol building.

h. **Access to Capitol Grounds and Protester Rights:** Whether protesters were legally entitled to be on U.S. Capitol building grounds, whether the U.S. Capitol building was open or closed to the public, and whether demonstrators were informed of any restrictions.

i. **Post-Event Ratification and Policy Endorsement:** Whether higher-level officials ratified the use of force after the fact, thereby creating municipal or federal liability.

j. **MPD as Borrowed Servants and Vicarious Liability:** Whether the Metropolitan Police of the District of Columbia were present on the U.S. Capitol building grounds in a capacity and under the supervision and control of the U.S. Capitol Police command(ers) such that the United States would be vicariously liable under the FTCA for those MPD officers' conduct.

9

## *DAMAGES*

24.    As a direct and proximate result of the conduct of the defendant, The United States, by and through its police officers, both the Capitol Police and the borrowed officers of the MPD, each of the plaintiffs and class members have suffered one or more of the following: bodily injury and resulting pain and suffering, disability, disfigurement, severe emotional distress and psychological trauma, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiffs and class members will suffer losses into the future.

## *COUNT I – GENERAL NEGLIGENCE*
(Against the United States under 28 U.S.C. § 1346(b))

25.    Plaintiffs reallege paragraphs 1 through 24 as though fully alleged herein.

26.    The Capitol Police generally and each of the police officers on the scene that day, including members of the MPD, owed an ordinary duty of care to the protesters and class members to protect them from unreasonable risk of harm.

27.    The Capitol Police breached that duty by failing to use reasonable care and actively exposing the protesters and class members to unreasonable risks of harm, including but not limited to the actions alleged above in the General Factual Allegations.

28.    As a direct and proximate result of the foregoing acts of the defendant, plaintiffs and the class members suffered physical injury, chemical exposure, emotional distress, and economic damages, as alleged in the Damages section above.

## COUNT II – ASSAULT
(Against the United States under 28 U.S.C. § 2680(h))

29.    Plaintiffs reallege paragraphs 1 through 24 and 26 and 27 as though fully alleged herein.

30.    Under 28 U.S.C. § 2680(h), the United States is liable for assault committed by "investigative or law enforcement officers," which includes the Capitol Police. Also included are the Capitol Police's borrowed servants who on January 6, 2021 at the west side of the Capitol included officers of the MPD.

31.    On January 6, 2021, the police intentionally deployed munitions in a manner that placed plaintiffs and the class members in immediate apprehension of harmful and offensive contact. Plaintiffs and class members were struck with pepper spray, O.C. gas, and/or CS Gas as alleged above. The deployment of explosive munitions, chemical agents, and impact projectiles into a peaceful crowd constitutes assault and battery under applicable law.

32.    Also, some of the police interacted physically with the protesters/class members and struck them with Billy clubs, asps and sometimes punched or struck the protesters/class members with other weapons and/or fists and/or open hands which constitutes assault and battery under applicable law.

33.    As a direct and proximate result of the foregoing acts of the defendant, plaintiffs and the class members suffered physical injury, chemical exposure, emotional distress, and economic damages, as alleged in the Damages section above.

## COUNT III – NEGLIGENT SUPERVISION
## AND NEGLIGENT LACK OF CONTROL
(Against the United States under 28 U.S.C. § 1346(b))

34.    Plaintiffs reallege paragraphs 1 through 24 and 26, 27 and 30 through 32.

11

35.     Under 2 U.S.C. § 1961 the Capitol Police are responsible for policing the U.S. Capitol building and grounds. (Congressional Research Service "Law Enforcement's Response to the January 6th Events at the Capitol" Jan. 22, 2021). This is a non-delegable duty. This is a duty of ordinary care owed to the protesters and class members to protect them from unreasonable risk of harm.

36.     On January 6, 2021 at the request of the Capitol Police, the MPD assisted the Capitol Police with "expelling" the protesters and class members and "securing" the U.S. Capitol building. The MPD did so under the direction, supervision, authority and duty of the Capitol Police, and the United States is vicariously liable for the actions of the MPD.

37.     On January 6, 2021, U.S. Capitol Police Chief Steven Sund was not present at the west side of the U.S. Capitol building. He was inside at the U.S. Capitol Police Command Center. Additionally, Deputy Chief Yogananda Pittman was not present at the west side of the U.S. Capitol building. She was inside at the U.S. Capitol Police Command Center. At all relevant times, Chief Sund and Deputy Chief Pittman were law enforcement officers of the United States. The failure of both Chief Sund and Deputy Chief Pittman to be present on-site on the west side to lead their officers and the MPD officers  constitutes negligence which caused and/or substantially contributed to the lack of control, leadership and the acts of excessive force alleged herein.

38.     Instead, the highest-ranking U.S. Capitol Police commander physically present on the west side of the U.S. Capitol building on January 6, 2021 was Deputy Chief Eric Waldow. At all relevant times, Deputy Chief Waldow was a law enforcement officer of the United States. He served as the Incident Commander. In that role, he exercised real-time tactical authority over all law enforcement personnel operating within the U.S. Capitol building perimeter. This included the MPD officers, who responded to the U.S. Capitol building at the request of the Capitol Police.

39.     Deputy Chief Waldow owed the police officers on the west side of the U.S. Capitol, and the public in general, a duty to exercise reasonable care in: (1) disseminating accurate intelligence; (2) providing correct threat prioritization; (3) deploying officers in a manner consistent with safety and operational necessity; (4) coordinating effectively with MPD leadership; (5) maintaining situational awareness and adjusting posture accordingly.

40.     Waldow breached his duties through negligent operational guidance and tactical mismanagement, including but not limited to: (1) failure to disseminate critical intelligence to the police officers; (2) tactical mismanagement of perimeter defense; (3) inadequate coordination with MPD leadership; (4) failing to assure that three warnings to disperse were given as required by District of Columbia First Amendment Assemblies Act, D.C. Code § 5-331-07 ("FAAA") when no such warnings were given; (5) allowing pepper spray and munitions to be launched into the protester crowd by both Capitol Police and officers of the MPD; and, (6)  further allowing the continuation of the launching of munitions after initial launches had occurred.

41.     Deputy Chief Waldow was further negligent in his (1) mis-prioritization of threats; (2) failure to disseminate critical intelligence to MPD officers; (3) tactical mismanagement of perimeter defense; (4) inadequate coordination with MPD leadership.

42.     The injuries alleged were caused in substantial part by the negligence of Chief Sund and Deputy Chief Pittman and these claims arose from their negligence and the assaults and batteries alleged above.

43.     The plaintiffs' injuries and the injuries of the class members were a direct and proximate result of the excessive force by the police which was substantially caused by the negligent supervision and control of Deputy Waldow, Assistant Chief Pittman and Chief Sund's collective

and each individual's own failure to supervise and control the actions of the Capitol Police and the MPD.

44.    As a direct and proximate result of the foregoing acts of the defendant, plaintiffs and the class members suffered physical injury, chemical exposure, emotional distress, and economic damages, as alleged in the Damages section above.

## *RELIEF REQUESTED*

WHEREFORE, plaintiffs respectfully request that the Court:

1.    Certify this case as a class action on behalf of the proposed class described in paragraph 18.

2.    Designate Patrick Sullivan, Marie Sullivan and Alan E. Fischer, III as representatives of the class.

3.    Issue a judgment declaring that the United States Capitol Police and the Metropolitan Police of the District of Columbia assaulted and battered protesters on the west side of the U.S. Capitol building and acted negligently on January 6, 2021 when they launched chemical munitions, tear gas and pepper spray into the crowd of protesters and struck the protesters with their hands and with weapons.

4.    Award compensatory damages to the plaintiffs and all the class members.

5.    Award attorneys' fees and costs.

6.    Grant such other relief as the Court may deem just and proper.

14

## *JURY TRIAL DEMAND AND REQUEST*

Plaintiffs demand a trial by jury of all issues so triable as a matter of right and plaintiffs demand damages in excess of twenty dollars. (See U.S. CONST. amend. VII). Plaintiffs further and as an alternative, request that the Court try the issues of this matter with an advisory jury pursuant to Fed.R.Civ.P. 39(c) if a jury trial is not otherwise available.

Date: March 27, 2026.

Respectfully submitted,
Austin Carr, P.A.
6314 Engram Road
New Smyrna Beach,
Volusia County,
Florida 32169
austin@austincarrlaw.com
786-282-2882

/s/ Stephen Austin Carr, Esq.
Florida Bar No: 440833

15