UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

PATRICK SULLIVAN and
MARIE SULLIVAN and
ALAN E. FISCHER, III
individually and on behalf of all
others similarly situated,

Case No.: 5:26-cv-00220-PGB-PRL

Plaintiffs,

JURY TRIAL REQUESTED

v.

UNITED STATES OF AMERICA,

Defendant.
_________________________________/

AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Patrick Sullivan and Marie Sullivan and Alan E. Fischer, III, by and through undersigned counsel, bring this action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiffs file this first amended complaint as a matter of right, pursuant to Fed.R.Civ.P. 15(a)(B), and allege as follows:

## *INTRODUCTION*

1. This case is about the United States Capitol Police (the "Capitol Police") and the Metropolitan Police of the District of Columbia ("MPD") indiscriminately shooting chemical munitions, including rubber pepper

bullets, pepper spray, tear gas, "O.C." gas and "C.S." gas[1] into a crowd of thousands of people at the United States Capitol on January 6, 2021. The people hit by the chemical munitions and exposed to the various chemical agents were injured.

2. This is a Federal Tort Claims Act ("FTCA") class action seeking money damages for injuries caused when the police indiscriminately launched explosive chemical munitions, chemical agents, and impact projectiles into a peaceful crowd and thereby physically assaulted the members of the crowd that was assembled on the west side outdoor terrace and grounds of the United States Capitol on January 6, 2021.

3. The law enforcement officers were the United States Capitol Police and, Metropolitan Police of the District of Columbia who were on the Capitol grounds at the request of the United States Capitol Police. At all times relevant, the Metropolitan Police of the District of Columbia officers were under the direction and control of the United States Capitol Police. The Metropolitan Police of the District of Columbia assisted as borrowed servants and the United States is vicariously liable for the actions of the Metropolitan Police of the District of Columbia. (*herein, when applicable,* the United States

[1] The chemical munitions used are further defined in detail in paragraph 14 of this Amended Class Action Complaint.

Capitol Police and the Metropolitan Police of the District of Columbia will be jointly referred to as simply "the Police" or "Police").

4. The actions of the Police caused physical and emotional injuries, including but not limited to eye irritation, burning, excessive tearing and burning pain of the skin, redness, rashes and adverse respiratory symptoms of coughing choking sensations chest tightness, wheezing and shortness of breath and other damages to plaintiffs, class members and thousands of other protesters. (See damages allegations in more detail in paragraph 24).

***JURISDICTION AND VENUE***

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1346(b)(1), which grants district courts exclusive jurisdiction over civil actions for money damages against the United States for: "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a).

6. Plaintiffs also bring this action pursuant to 28 U.S.C. §§ 2671–2680, under which the defendant has waived sovereign immunity for torts committed by federal law enforcement officers, including assault, under § 2680(h).

7. Plaintiffs each timely filed administrative claims (Standard Form 95) with The United States Capitol Police more than six months have passed without a final disposition, satisfying 28 U.S.C. § 2675(a). The administrative claims and this action were timely filed because, although the events occurred on January 6, 2021, the statute of limitations period is non-jurisdictional and subject to equitable tolling under the doctrine announced in *U.S. v. Kwai Fun Wong*, 575 U.S. 402 (2015) and the extraordinary circumstances of this case. The statute of limitations[2] did not begin to run until President Trump pardoned the plaintiffs and the other potential class members on January 20, 2021.

8. Venue is proper in the United States District Court, Middle District of Florida, Ocala Division, under 28 U.S.C. § 1402(b) because plaintiffs Patrick Sullivan and Marie Sullivan reside in Citrus County, Florida, and they seek money damages for personal injuries. Plaintiff Alan E. Fischer III also resides within the geographical area for the Middle District of Florida. Fischer also seeks money damages for personal injuries.

[2] The statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c)(1). The defendant bears the burden of first pleading the affirmative defense. Therefore, plaintiff will wait to see if the defense is asserted and respond accordingly if it is raised in response to this Amended Class Action Complaint.

## *THE PARTIES*

9. Plaintiffs Patrick Sullivan and Marie Sullivan and Alan E. Fischer, III were physically present on the West Terrace/West Plaza of the U.S. Capitol building on January 6, 2021. At all relevant times, all three plaintiffs and all potential class members were peacefully protesting the opening, reading and counting of the Electoral College votes for the 2020 presidential election. Plaintiffs Patrick Sullivan and Marie Sullivan were exposed to pepper spray ("O.C." gas) and suffered injuries typical of that kind of toxin exposure. Fischer was on the west side of the U.S. Capitol building and was struck with a pepper ball. Later, he was exposed to pepper spray, and O.C. gas launched by the Police and suffered injuries typical of that kind of toxin exposure.

10. Defendant United States of America is the proper defendant in an FTCA action and is liable for certain tortious acts of its employees, including the Capitol Police who sprayed and assaulted the protesters on January 6, 2021. All of the Police officers present at or near the west side of the U.S. Capitol building were acting within the course and scope of their employment and under the authority of the United States.

11. Additionally, the Police officers of the Metropolitan Police of the District of Columbia who were at the U.S. Capitol building on January 6, 2021 were requested by the United States to assist the Capitol Police and to serve

that day under the direction, supervision and control of the Capitol Police. As such the MPD officers served the United States as borrowed servants. The actions of the MPD officers as alleged herein were done within the course and scope of their employment and under the authority of the United States. The actions of the MPD officers were done within the course and scope of their status as borrowed servants. The United States is vicariously liable for the actions of the MPD as alleged herein.

## *GENERAL FACTUAL ALLEGATIONS*

12. On January 6, 2021, the plaintiffs and class members gathered on the west side of the U.S. Capitol building in Washington, D.C. to exercise their First Amendment Rights to protest the opening, reading and counting of the Electoral College votes for the 2020 presidential election between Donald J. Trump and Joseph R. Biden. There was a crowd of well over 1,000 protesters on the west side.

13. The Capitol Police were outside the west side of the U.S. Capitol securing the premises and were being assisted on the U.S. Capitol building grounds by members of the MPD.

14. At approximately 1:06 p.m. on January 6, 2021, the Police started to indiscriminately launch explosive munitions into the crowd that included: (1) pepper balls, which are small rubber balls filled with a synthetic hot-pepper-

like substance called Oleoresin Capsicum ("O.C."); (2) FM303 projectiles which also contain O.C. and have striations that make the projectile bullet spin for more accuracy; (3) pepper spray from canisters that project a stream from 10 to 15 feet; (4) sting-ball grenades, which are rubber balls about the size of a softball that have a pin to pull after which an internal CO2 cartridge explodes spraying out rubber pellets, some solid and others filled with O.C.; (5) MK46 pepper spray containers, which are similar to a fire extinguishers that spray O.C. to a distance of 25 to 30 feet; (6) flash-bang grenades which the Police threw in the air and which caused at least one of the protesters to catch on fire; (7) O.C. smoke grenades which mix O.C. and smoke to keep the O.C. droplets airborne 2 to 3 times longer than the O.C. chemical stays in the air by itself; (8) Blue Tip, exact impact heavy duty 40 mm sponge rounds; (9) a "Triple Chaser" which is a hand tossed container that bursts into three pieces each of which spews 2-chlorobenzalmalononitrile, a much stronger chemical than the O.C. (commonly called "CS Gas" or tear gas). The Police officers used 40 mm grenade launchers to fire muzzle blast munitions which flew into the faces of the demonstrators. The 40 mm grenade launchers were also used to fire tear gas and other projectiles into the middle of the demonstration, affecting peaceful, praying citizens exercising their First Amendment rights. (The

various weapons referenced above will be hereafter referred to generically as "Chemical Munitions.")

15. The crowd was composed of protesters who were overwhelmingly peaceful before the use of Chemical Munitions by the Police started. They were assembled on the grounds not engaging in violence. A very small group of protesters were up along a temporary bike fence line and pushing the fence. No one intentionally harmed any Police officers. The munitions launched into the crowd were not directed at any of the people who were pushing on the fence line. Instead, the Police were shooting indiscriminately into the crowd further back in an area with peaceful protesters.

16. The Police never gave any of the crowd any warnings before shooting. Under District of Columbia law, before the Police can use force against protesters they must give the crowd three verbal warnings. District of Columbia First Amendment Assemblies Act, D.C. Code § 5-331-07 ("FAAA"). No verbal warnings or any warnings were given to the crowd of protesters.

17. The indiscriminate shooting of munitions into the crowd went on for well over an hour. The Police admitted on video an hour after the shooting started that the munitions being shot into the crowd were "hitting ***innocent*** people." (*emphasis added*).

## *CLASS ALLEGATIONS*

18. Plaintiffs bring this action on behalf of themselves individually and as purported class representatives under Fed. R. Civ. P. 23(b)(3). The proposed group of people and potential class members on whose behalf the plaintiffs bring this action meet the following proposed class member definition(s):

***Plaintiffs' First Proposed Class Definition:***

> All persons who were on the West Terrace, West Plaza, West Steps and/or West Lawn of the U.S. Capitol building on January 6, 2021, who were struck by chemical agents/weapons or exposed to chemicals launched or thrown or Chemical Munitions used by law enforcement personnel. (This proposed class is estimated to be in excess of 1,000 people).

***Plaintiffs' Second Proposed Alternative Class Definition:***

> All persons who were on the West Terrace, West Plaza, West Steps and/or West Lawn of the U.S. Capitol building on January 6, 2021, who were struck by chemical agents/weapons or exposed to chemicals launched or thrown or Chemical Munitions or weapons used by law enforcement personnel and who have submitted to the United States Capitol Police a Form 95 for the commencement of a claim under the Federal Tort Claims Act. (This proposed class is estimated to be between 60 to 75 people. By the time this action goes to trial, over six months will have passed since the class members submitted their Forms 95.)

***Plaintiffs' Third Proposed Alternative Class Definition:***

> All persons who were on the West Terrace, West Plaza, West Steps and/or West Lawn of the U.S. Capitol building on January 6, 2021, who were struck by chemical agents/weapons or exposed to chemicals launched or thrown or Chemical Munitions or weapons used by law enforcement personnel and who have submitted to the United States Capitol Police a Form 95 for the

> commencement of a claim under the Federal Tort Claims Act before the filing of this action on March 27, 2026. (This proposed class is estimated to be approximately 35 people.)

19. All persons alleged to be class members were at the United States Capitol protesting peacefully and lawfully in the exercise of their God-given First Amendment rights of "freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const. amend. I).

20. Not included within any proposed class are persons who, ***before*** being assaulted and/or exposed to Chemical Munitions, had physically assaulted any Police officer. This class action lawsuit is for peaceful protesters and not for people who might have started rioting against the Police before the Police indiscriminately attacked the crowd with Chemical Munitions.

21. The class under either of plaintiffs' proposed class definitions is numerous. Joinder is impracticable.

22. Although some of the proposed class members in plaintiffs' *First Proposed Class Definition* and *Second Proposed Alternative Class Definition* have not submitted Forms 95 or did not submit Forms 95 before the six-month window of when this action was filed (3/27/2026), plaintiffs contend that the Forms 95 are not required of all class members. Most importantly, the Forms 95 that were submitted by plaintiffs and the others were completely ignored

by the United States of America before the filing of this action. Therefore, in this instance, the requirement that Forms 95 would have been otherwise needed for class membership is the requirement of a futile act and thus, the formality of Forms 95 is not a legal necessity for any members of the class. The law does not require futile acts.

23. Common questions of law and fact predominate, including the following:

a. **Uniform Use of Force and Shared Factual Circumstances:** All class members were subjected to the same attack, at the same time and place, involving the same or similar weapons, munitions, tactics, and methods of engagement (albeit chaotic).

b. **Centralized Planning, Authorization, and Command Structure:** The same governmental actors planned, authorized, oversaw, and executed the use of force, under a unified command hierarchy (albeit chaotic).

c. **Common Constitutional Questions:** All class members possessed the same First Amendment rights to assemble, speak, and petition the government, and the same conduct justified their presence and allegedly violated those rights.

d. **Adequacy of Warnings and Dispersal Opportunities:** Whether officers adequately informed protesters that they must disperse and whether class members were given a meaningful opportunity to comply before force was used.

e. **Legality and Reasonableness of Defendants' Justifications:** Whether the defendant's stated reason(s) for deploying force were uniform across the class and whether those justifications were reasonable under the circumstances.

f. **Intent and Mental State Behind the Use of Force:** Whether force was deployed with impermissible intent—such as intent to cause harmful or offensive contact or to place protesters in apprehension of imminent harm.

g. **Government Planning Failures and Deliberate Indifference:** Whether the lack of adequate staffing or crowd control planning demonstrates negligence, deliberate or reckless indifference to protesters' constitutional rights and to officers' ability to protect the U.S. Capitol building.

h. **Access to Capitol Grounds and Protester Rights:** Whether protesters were legally entitled to be on U.S. Capitol building grounds, whether the U.S. Capitol building was open or closed to the public, and whether demonstrators were informed of any restrictions.

i. **Post-Event Ratification and Policy Endorsement:** Whether higher-level officials ratified the use of force after the fact, thereby creating municipal or federal liability.

j. **MPD as Borrowed Servants and Vicarious Liability:** Whether the Metropolitan Police of the District of Columbia were present on the U.S. Capitol building grounds in a capacity and under the supervision and control of the U.S. Capitol Police command(ers) such that the United States would be vicariously liable under the FTCA for those MPD officers' conduct.

k. **Denial of First Amendment Rights:** As a result of the launching of Chemical Munitions and and/or physical injuries suffered all class members were unable to exercise their God-given Rights under the First Amendment including "freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const. amend. I).

l. **Common and/or Similar Damages**: As a result of being exposed to the Chemical Munitions, all class members suffered common or at least similar damages as those described below in paragraph 24.

## *COMMON DAMAGES*

24. As a direct and proximate result of the conduct of the defendant, The United States, by and through the Police officers—both the Capitol Police and the borrowed officers of the MPD—each of the plaintiffs and class members have suffered one or more of the following injuries which are common to the Chemical Munitions used by the Police, including: (1) eye irritation such as intense burning, excessive tearing, involuntary closing of the eyelids and/or temporary blindness; (2) adverse skin effects such as severe burning pain, redness, rashes and/or chemical-like blisters; (3) adverse respiratory impacts such as coughing, choaking sensations, chest tightness, wheezing and/or shortness of breath; (4) emotional injuries such as severe emotional distress and psychological trauma, mental anguish, inconvenience, loss of capacity for the enjoyment of life; (5) and, consequential injuries such as aggravation of a previously existing condition(s), and loss of their God-given Rights under the First Amendment of the United States Constitution including "freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const. amend. I).

## *COUNT I – GENERAL NEGLIGENCE*
(Against the United States under 28 U.S.C. § 1346(b))

25. Plaintiffs reallege paragraphs 1 through 24 as though fully alleged herein.

26. The Capitol Police generally and each of the Police officers on the scene that day, including members of the MPD, owed an ordinary duty of care to the protesters and class members to protect them from unreasonable risk of harm.

27. The Capitol Police breached that duty by failing to use reasonable care and actively exposing the protesters and class members to unreasonable risks of harm, including but not limited to the actions alleged above in the General Factual Allegations.

28. As a direct and proximate result of the foregoing acts of the defendant, plaintiffs and the class members suffered physical injury, chemical exposure, emotional distress, and economic damages, as alleged in the Common Damages section above.

***COUNT II – ASSAULT***

(Against the United States under 28 U.S.C. § 2680(h))

29. Plaintiffs reallege paragraphs 1 through 24 and 26 and 27 as though fully alleged herein.

30. Under 28 U.S.C. § 2680(h), the United States is liable for assault committed by "investigative or law enforcement officers," which includes the Capitol Police. Also included are the Capitol Police's borrowed servants who on January 6, 2021 at the west side of the Capitol included officers of the MPD.

31. On January 6, 2021, the Police intentionally deployed munitions in a manner that placed plaintiffs and the class members in immediate apprehension of harmful and offensive contact. Plaintiffs and class members were struck with pepper spray, O.C. gas, and/or CS Gas as alleged above. The deployment of explosive munitions, chemical agents, and impact projectiles into a peaceful crowd constitutes assault and battery under applicable law.

32. As a direct and proximate result of the foregoing acts of the defendant, plaintiffs and the class members suffered physical injury, chemical exposure, emotional distress, and economic damages, as alleged in the Common Damages section above.

***RELIEF REQUESTED***

WHEREFORE, plaintiffs respectfully request that the Court:

1. Certify this case as a class action on behalf of the proposed class described in paragraph 18.

2. Designate Patrick Sullivan, Marie Sullivan and Alan E. Fischer, III as representatives of the class.

3. Issue a judgment declaring that the United States Capitol Police and the Metropolitan Police of the District of Columbia assaulted and battered protesters in the way and manner they used the Chemical Munitions on the west side of the U.S. Capitol building and that the

Police acted negligently on January 6, 2021 when they launched the Chemical Munitions, into the crowd of protesters.

4. Issue a judgment declaring that the United States Capitol Police and the Metropolitan Police of the District of Columbia denied all the class members of their Rights under the First Amendment including "freedom of speech . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const. amend. I).

5. Award compensatory damages to the plaintiffs and all the class members.

6. Award attorneys' fees and costs.

7. Grant such other relief as the Court may deem just and proper.

***JURY TRIAL DEMAND AND REQUEST***

Plaintiffs demand a trial by jury of all issues so triable as a matter of right and plaintiffs demand damages in excess of twenty dollars. (See U.S. CONST. amend. VII). Plaintiffs further and as an alternative, request that the Court try the issues of this matter with an advisory jury pursuant to Fed.R.Civ.P. 39(c) if a jury trial is not otherwise available.

Dated: August 24, 2026.

Respectfully submitted,

*/s/ Austin Carr, Esq.*
Austin Carr, P.A.
*Board Certified Civil Trial Attorney*
6314 Engram Road
New Smyrna Beach, FL 32169
Telephone: 786-282-2882
Email: austin@austincarrlaw.com
Fla. Bar No. 440833

## *CERTIFICATE OF SERVICE*

I hereby certify that on August 24, 2026, I caused a true copy of the foregoing to be filed using the Court's CM/ECF filing system, which will send an electronic notice of filing.

*/s/Austin Carr, Esq*.
Austin Carr, P.A.
Attorney for Plaintiffs