**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

PATRICK SULLIVAN, MARIE
SULLIVAN AND ALAN E. FISCHER, III,
INDIVIDUALLY AND ON BEHALF OF
OTHERS SIMILARLY SITUATED
Plaintiffs,

v. Case No. 5:26-CV-00220-PGB-PRL

UNITED STATES OF AMERICA,
Defendant.
_______________________________/

**PLAINTIFFS' MEMORANDUM OF LAW OPPOSING**
**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiffs hereby respond to the Defendant's Motion to Dismiss (D.E. # 28) the Amended Complaint (D.E. #26) as follows:

***Statute of Limitations – Equitable Tolling;***
***Wong and "Extraordinary Circumstances"***

The two-year statute of limitations under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (FTCA) can be tolled; it is not jurisdictional. *U.S. v. Kwai Fun Wong*, 575 U.S. 402 (2015). The United States admits this on page twelve of its motion. (D.E.#28). Under *Wong*, the FTCA statute of limitations can be extended under "extra ordinary circumstances." *Wong,* 575 U.S. at 408.

The extraordinary circumstances surrounding January 6, 2021 were unlike anything previously experienced in modern American history. The Executive Branch itself described the events as involving "unique and extraordinary circumstances." As

cited by the United States Court of Appeals, D.C. Circuit in *Trump v. Thompson*, 20 F.4th 10, 31-32 (D.C. Cir. 2021). In the *Trump v. Thompson* opinion, the appellate court noted that White House Counsel had advised the U.S. Archivist that President Biden had concluded that January 6 involved "unique and extraordinary circumstances." (See, Dana A. Remus Oct. 8, 2021 to the Archivist, Exhibit 1 hereto). Thus, the United States Government has admitted and has already characterized the events of January 6, 2021 as: “Extraordinary circumstances.”

***Extraordinary Circumstances: The Fifth Amendment***

January 6 protesters with potential FTCA claims faced a constitutional dilemma: preserve their Fifth Amendment privilege against self-incrimination (U.S. Const. amend. V.) or disclose information necessary to commence the FTCA administrative process.

The standard Form 95 to administratively pre-suit a FTCA claim requires the claimant to: “State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.” So, in order to start the claims process, a prospective plaintiff needs to say that he/she was at the United States Capitol on January 6. That kind of admission would get the person arrested. (Exhibits 2, 3, & 4, Declaration of Pierce and Affidavits of Pallas and Barket).

Any protester injured by police on January 6 faced a dilemma. Prior to the President’s pardon, all the injured protesters were forced to choose between a “rock and a hard place.” As required by the Form 95, anyone making a claim for

negligence against the Capitol Police would necessarily have to disclose the "who, what, when and where" of their claim. Such a disclosure would have been an admission to be prosecuted for alleged crimes at the Capitol that day. At the very minimum, that disclosure would have put a target on their back to be further investigated for crimes at the Capitol. (Exhibits 2, 3 & 4).

A court cannot force a "plaintiff to choose between his silence and his lawsuit." *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (5th Cir. 1980). "[D]ismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible." *Wehling v. C.B.S.,* 608 F.2d at 1087[1]

> "In this context "penalty" is not restricted to fine or imprisonment. It means, as we said in *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly."
>
> *Spevack v. Klein*, 385 U.S. 511, 515, (1967).

The Supreme Court has held that government may not condition valuable rights upon the surrender of constitutional protections. *Lefkowitz v. Turley*, 414 U.S. 70 (1973)(architects who had public contracts with New York could not be forced to testify in a corruption investigation upon threat of being disqualified from future contracts).

[1] Of course, under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the *Wehling* case is precedent for this District Court.

The dilemma of the Fifth Amendment verses giving up various civil rights in lawsuits is not an uncommon issue once a civil case is filed and discovery starts. This court has previously held:

> Instead, "[a] court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interest of justice.' " *United States v. Lot 5*, 23 F.3d 359, 364 (11th Cir. 1994) (citing *United States v. Kordel*, 397 U.S. 1, 12, 90 S. Ct. 763, 25 L. Ed. 2d 1 & n.27 (1970)). Special circumstances exist, and a court "*must* stay a civil proceeding when a contemporaneous criminal action effectively prevents a defendant from offering probative evidence in defense of the civil proceeding and inevitably results in an adverse civil judgment because the defendant invoked the Fifth Amendment privilege against self-incrimination."
>
> *In re Mad Toyz III LLC*, 2026 U.S. Dist. LEXIS 104168 (M.D. Fla. 2026).

The same standard applies for a plaintiff in a civil action. See, *Langiano v. City of Fort Worth*,131 F.4th 285 (5th Cir. 2025).

> "[A] civil plaintiff has no absolute right to both his silence and his lawsuit," ***but*** federal courts "defer civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice" require. A district court must "weigh competing interests" and should only grant a stay when "special circumstances" exist, such as "the need to avoid 'substantial and irreparable prejudice.'"
>
> *Langiano*, 131 F.4th at 290-91(*emphasis added*).

In our January 6 case the same dilemma exists but there is a twist. The pre-suit requirements of FTCA and Form 95 would otherwise compel the waiver of Fifth Amendment rights **before** filing suit. The recommended stay mechanism doesn't fit the facts of this case. Instead, the prospective plaintiff is put between a rock and a hard place that he cannot escape.

But still, the court should take a balance-of-interests approach. The Fifth Circuit recognized weighing the Fifth Amendment rights against other rights is not easy: "The district court's task in this case is complicated by the presence of competing constitutional and procedural rights." *Wehling*, 608 F.2d at 1088. "[T]he court should have measured the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible. This balancing-of-interests approach ensures that the rights of both parties are taken into consideration before the court decides whose rights predominate." *Id.*

This basic principle cuts both ways. In one forfeiture case, it was the United States that sought equitable tolling. In, *United States v. $389,820.00 in United States Currency,* 2024 U.S. App. LEXIS 13128 (11th Cir. 2024) the court allowed tolling and ruled that equitable tolling "allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running." (citing: *Dotson v. United States*, 30 F.4th 1259, 1268 (11th Cir. 2022) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)).

In most non-governmental litigation where a pre-suit process is not required, a stay is available; however in this case it is not. The Form 95 demands statements, disclosures and certification *BEFORE* the lawsuit is even filed. So, the only remedy to preserve the Constitutional Right is in equity. And, equity is applied through a tolling of the statute of limitations. The Fifth Amendment rights are protected; the citizens' rights under the FTCA are protected. Is the government harmed by a stay? Not really, and certainly not under these facts. As discussed below extensive review

and over-analysis of what happened on January 6, was exhaustively investigated by the government. The government cannot argue with a straight face that they have been prejudiced. [2]

Under the "unprecedented circumstances" of January 6, equitable tolling serves the same function that courts routinely accomplish through stays of civil proceedings when criminal exposure threatens. These "extraordinary[3] circumstances" fit the exceptions for tolling referenced in *Wong*. This procedural "Catch 22" presents an extraordinary circumstance that can only be remedied in the interests of justice through an equitable tolling of the statute of limitations.

***Extraordinary Circumstances: Spoliation and Rule 37;***

A second reason to toll the statute of limitations is for spoliation of evidence or Fed.R.Civ.P. 37(e). The United States, and specifically the United States Congress, has hidden or otherwise failed to preserve significant information, evidence and facts about January 6, 2021. This is well documented in the March 11, 2024 report of the House Committee on House Administration. H. Comm. on House Admin., *Initial Findings Report on the Failures and Politicization of the January 6 Select Committee and the Activities Leading up to January 6, 2021* 15 (Mar. 11, 2024) (prepared at the direction of Chairman Barry Loudermilk). For brevity, this will be referred to hereafter as The Loudermilk Report.

---

[2] Or at least they should be challenged to prove it.

[3] Again, The Executive Brach of the United States has admitted this case is one of "Extraordinary Circumstances." (See Exhibit 1 hereto).

The Committee of House Administration heavily criticized the "Select Committee" and the many deficiencies in their report. Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, *Final Report* (Dec. 22, 2022). The "Select Committee" was chaired by Representative Bennie Thompson. For brevity, this will be referred hereafter as "The Select Committee" Report or the Thompson Report. Both of these reports are available as evidence in this case. Fed.R.Evid. 201; *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (taking judicial notice of public records); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-81 (11th Cir. 1999) (court may consider publicly filed governmental documents and records whose authenticity is not challenged).

There was certainly a lot of political controversy over "The Select Committee's" Report and investigation. However, plaintiff here focuses only on where both reports have agreed common ground, as will be seen in the following citations.

***<u>The Loudermilk Report</u>***

The Loudermilk Report states that "The Select Committee" failed to preserve substantial evidence generated or gathered during its investigation:

> Chairperson Thompson admitted that the Select Committee did not preserve hundreds of video recordings made by the Select Committee during transcribed interviews and depositions. Chairperson Thompson also admitted that as Chair of the Select Committee, he *failed to archive certain transcripts of transcribed interviews* conducted by the Select Committee, in violation of House Rules.

Loudermilk Report, at page 15 (*emphasis added*).

The Select Committee *failed to archive all of its records* at the end of the 117th Congress. These records include evidence that undermines some of the most headline-grabbing themes of the Select Committee hearings . . . ."

Loudermilk Report, at page 16 (*emphasis added*).

"OVER ONE TERABYTE OF DIGITAL DATA MISSING
The Select Committee produced a significant amount of digital data. Based on an inventory of this digital data and statements from Chairperson Thompson, the Subcommittee discovered that the Select Committee failed to archive more than an entire terabyte of digital data.

Loudermilk Report, at page 15 (*emphasis in original*).

In a July 7, 2022, letter to Chairman Loudermilk, Representative Thompson claimed that the Select Committee archived "over 4-terabyte[s]" of digital data.88 . . . . 89 Representative Thompson went on to say that permanent records, totaling over four terabytes of data, "were electronically archived in that file."90 However, after reviewing this archive file, the Subcommittee received less than three terabytes of digital data from the Select Committee. *One terabyte is a substantial amount of missing data. One terabyte of data is equivalent to 6.5 million document pages such as PDFs or office files, 500 hours of high definition video, or 250,000 photos.*

Loudermilk Report, at page 17 (*emphasis added*).

In addition to these missing video recordings, the Select Committee also *failed to archive transcripts* from numerous transcribed interviews or depositions of White House and USSS personnel interviewed by the Select Committee.

Loudermilk Report, at page 19 (*emphasis added*).

Chairperson Thompson admitted that he *failed to comply with House Rules* when he acknowledged that he refused to archive these transcripts.

Loudermilk Report, at page 20 (*emphasis added*).

By the White House's own admission, *these interviews were not only unprecedented but were also "vital"* to the Select Committee's investigation.

111 Despite this, these transcripts were not archived by the Select Committee.

Loudermilk Report, at page 20 (*emphasis added*).

The missing evidence described fits under Fed.R.Civ.P. 37. *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.,* 881 F.3d 1293 (11th Cir. 2018). Of note, the remedies under Rule 37 can be severe. Plaintiffs are not asking at this time but it follows that if (1) a negative jury instruction is warranted, or (2) even a default judgment are possible, that merely tolling the statute of limitations at this juncture is "a measure no greater than necessary to cure the prejudice."

These circumstances support more than a generalized assertion that additional evidence might have been helpful. They identify specific categories of missing evidence—recorded interviews, deposition materials, transcripts, video, photographs, and other digital records—concerning the events leading up to and occurring on January 6. Such materials could bear directly on officer identification, command decisions, use-of-force instructions, contemporaneous observations, the sequence of events, the availability of less dangerous alternatives, and whether the alleged force resulted from negligent or wrongful acts or omissions.

The work of the "Select Committee" and its exclusion of secret information is analogous for case precedent purposes to secret meetings in two antitrust tolling cases. The Loudermilk Report notes, starting on page 14, that the "Select Committee did not show information with the American Public.*"* Or in other words, it was done in secret like the meetings in the precedents cited below.

Tolling is appropriate when there is concealment not only from an express false statement but also from restricting material information to a limited group. *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 826 (11th Cir. 1999)(concealment in a price-fixing scheme inferred from "secretly conducting meetings"). Likewise in *In re Copper Antitrust Litig*., 436 F.3d 782 (7th Cir. 2006), summary judgment on the statute of limitations was improper as equitable tolling applied because the plaintiffs produced evidence that the defendant's head of media relations destroyed notebooks recording press contacts in violation of the defendant's record-retention policy *In re Copper Antitrust Litig.,* 436 F.3d at 784.

As for "The Select Committee" missing records: "The House Clerk created a manual to provide additional guidance to committee chairs for the process of archiving records under House Rule VII. In that manual, the House Clerk specifies that depositions, transcripts, executive branch communications, et al. are among the records that should be archived pursuant to House Rules." Loudermilk Report, at page 16.

***Was There Bad Faith?***

In *Scharpf v. Gen. Dynamics Corp.,* 137 F.4th 188, 195 (4th Cir. 2025), the court held: "We hold that neither logic nor our precedent supports distinguishing between defendants who destroy evidence of their conspiracy and defendants who carefully avoid creating evidence in the first place. Accordingly, we reverse the dismissal of this matter." *Schrapf*, 137 F.4th at 193.

The Supreme Court noted back in 1918 that it could not "believe that Congress[4] intended to give immunity to those who for the period named in the statute might be able to conceal their fraudulent action from the knowledge of the [victim]." *Exploration Co. v. United States*, 247 U.S. 435, 449, (1918). The Supreme Court has therefore instructed "that the fraudulent concealment tolling doctrine is to be 'read into every federal statute of limitations,'" *Supermarket of Marlinton v. Meadow Gold Dairies,* 71 F.3d 119, 122 (4th Cir. 1995)(quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582, 90 L. Ed. 743 (1946)). This tolling doctrine is designed "to prevent a defendant from 'concealing a fraud . . . until' the defendant 'could plead the statute of limitations to protect it.'" *Id.* (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349, 22 L. Ed. 636 (1874)).

"The Select Committee collected and reviewed significantly more information about the underlying causes of January 6 than it released on its website. At the conclusion of the 117th Congress, the Select Committee released its highly promoted Final Report and carefully selected records to accompany it, that as their website suggests, supports the Select Committee's narrative. However, the documents released on the U.S. Government Publishing Office ("GPO") website do not represent all documents obtained by the Select Committee during its existence, and *specifically excludes information that did not support the Select Committee's narrative*."

Loudermilk Report, at page 14 (*emphasis added*).

Failure to follow known rules is evidence of bad faith in the subsequent loss, destruction or failure to preserve records. In *Duron v. Costco Wholesale Corp.*, 773 F. Supp. 3d 324, 340 (W.D. Tex. 2025), the Western District of Texas found that

[4] In a twist of irony, it is Congress, now 100 years later, that admits it concealed information. See Loudermilk Report at pages 14, 15 & 16 where Thompson's admissions are noted.

several factors supported bad faith where Costco failed to preserve surveillance footage despite receiving a preservation letter and despite its internal policy requiring retention of surveillance video after a bodily-injury incident. Costco also provided no clear or consistent explanation for the loss. *Duron v. Costco Wholesale Corp.,* 773 F. Supp. 3d 324, 340 (W.D. Tex. 2025). The authority therefore supports treating violation of an internal retention policy as a significant bad-faith factor. *Duron v. Costco Wholesale Corp.*, 773 F. Supp. 3d 324, 340 (W.D. Tex. 2025).

> Chairperson Thompson *admitted that he failed to comply with House Rules* when he acknowledged that he refused to archive these transcripts, which are House records, with the House Clerk at the end of the Congress.

Loudermilk Report, at page 20 (*emphasis added*).

For electronically stored information in federal litigation, Rule 37(e)(2) permits an adverse presumption, adverse jury instruction, dismissal, or default only upon a finding that the party intended to deprive another party of the information's use in litigation Fed.R.Civ.P. 37. The Eleventh Circuit equates that intent with bad faith and explains that it means destruction for the purpose of hiding adverse evidence, which is more than negligence or gross negligence *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1302 (11th Cir. 2023).

> Thus, "the crucial element is not that evidence was destroyed but rather the reason for the destruction." Moreover, we have stated that a violation of a record retention regulation "creates a presumption that the missing records contained evidence adverse to the violator."

> *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002)(citing: *S.C. Johnson & Son, Inc.*, 695 F.2d 253, 258 (7th Cir. 1982); *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998)).

Loudermilk has noted that the Select Committee started with a specific narrative. The Select Committee intentionally hid or failed to preserve evidence that was adverse to that narrative. Under *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.,* 75 F.4th 1290, 1302 (11th Cir. 2023), the Eleventh Circuit held that Federal Rule of Civil Procedure 37(e)(2)'s "intent to deprive" standard is equivalent to bad faith in other spoliation contexts, where bad faith generally means destroying evidence for the purpose of hiding adverse evidence *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1302 (11th Cir. 2023). In *Skanska,* the court upheld the bad-faith finding specifically because, despite an active litigation hold and active litigation, the company failed to back up custodians' cell phones, left ordinary destruction policies in place, made no preservation effort for months, and represented that no relevant documents had been destroyed before checking whether the data remained available *Skanska*, 75 F.4th at 1290.

Loudermilk notes on pages 14, 15 and 16 of his report that the "did not fit the narrative" theme was the motive for not preserving all the evidence. That clearly indicates that the destruction or failure to preserve was averse to the government's interest. The Eleventh Circuit equates that intent with bad faith and explains that it means destruction for the purpose of hiding adverse evidence, which is more than negligence or gross negligence. *Skanska*, 75 F.4th at 1302.

***<u>Questions of Fact; Not Appropriate for Rule 12(b)(6) Motion:</u>***

The dispute cannot be resolved by accepting an innocent explanation at the pleading stage. Equitable tolling ordinarily requires evidence beyond the pleadings and therefore is generally not amenable to resolution under Rule 12(b)(6). *Drennan v. PNC Bank*, 622 F.3d 275, 302 (3d Cir. 2010). Discovery is necessary to determine what materials existed, which were excluded or destroyed, who made those decisions, whether the losses resulted from negligence or deliberate conduct, and whether the unavailable evidence contradicted the Select Committee's public account. Thus, even if the Court applies a bad-faith, ill-motive, or intent-to-deprive standard by analogy, the present allegations create a factual dispute that independently defeats dismissal and precludes summary judgment on the undeveloped record.

The *Drennan* court noted: "[B]ecause the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a rule 12(b)(6) motion. *See, e.g., Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006), ("generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue.").

***The Defendant Conflates Rule 12(b)(6) with Rule 23.***

Plaintiffs have not yet filed a motion for class certification. Nor has the Court considered a class definition to see who may qualify. At present we have just three plaintiffs. This court has previously noted that arguments to dismiss based on "class allegations" are premature. In *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1347 (M.D.Fla. 2018), the court noted:

> Defendant also urges the Court to dismiss Plaintiff's "class allegations" under Rule 12(b)(6) because they fail to support a putative class action. . . . Such an argument is premature. Dismissing class allegations at the pleading stage is the functional equivalent of denying class certification. *See Herrera v. JFK Med. Ctr. Ltd P'Ship*, 648 F. App'x 930, 934 (11th Cir. 2016). Although there may be cases where the propriety of class certification is apparent from the Complaint, "the pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery . . . to determine whether a class may be certified." (citing: *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2009)).

In a subsequent opinion in this District, the court made a similar ruling on a motion to dismiss and to strike an alleged class action. *Daniel v. Navient Sols., LLC,* 328 F. Supp. 3d 1319 (M.D. Fla. 2018). The court stated: "An order on class certification is premature prior to discovery and the parties having an opportunity to thoroughly brief the Rule 23 requirements." 328 F. Supp. 3d 1at 1323.

Plaintiffs have alleged that they complied with the pre-suit requirements of 28 U.S. C. § 2675(a). (D.E. #26, ⁋7). The United States Capitol Police received their Form 95, with a cover letter from counsel describing the claim with links to video evidence of the reckless launching of pepper and O.C. spray into the crowd. They allege a sum certain for damages.

The government states in it's motion to dismiss: "A claim is deemed presented when the federal agency receives the claimant's SF-95 '***or other written notification of [the] incident***, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.'" (citing: *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843–44 (11th Cir. 2013) (quoting 28 C.F.R. § 14.2(a))(*emphasis added*). If the government means to quibble on a motion to dismiss with the way the Form 95 was completed, that is certainly not a jurisdictional issue because they clearly had written notice on August 19, 2025 with the Form 95s and the cover letter from counsel. (USPS Tacking Receipt, Exhibit 5). Moreover, the agency's regulations do not have the weight of statutory law. *Loper Bright Enters v. Raimondo*, 603 U.S. 369 (2024). The underlying Congressional intent of (1) notice to the Capitol Police and (2) a six month window to investigate and attempt settlement was certainly satisfied.

***Venue***

Venue is proper in the Middle District of Florida. Congress expressly granted FTCA plaintiffs the right to sue in their home district. Venue for FTCA actions is governed by 28 U.S.C. § 1402(b).

> (b) Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title [28 USCS § 1346] may be prosecuted only in the judicial district ***where the plaintiff resides*** or wherein the act or omission complained of occurred. (*emphasis added*).

The government argues that venue is improper; it states: "the case should be transferred for improper venue." (D.E. #26 at 5). That is a pure misstatement of law.

Venue is not merely proper in the Middle District of Florida; it is one of the only two venues Congress expressly authorized for FTCA actions. 28 U.S.C. § 1402(b). Plaintiffs reside in this District and elect to file here. The Eleventh Circuit requires substantial deference to that choice. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996)(citing: *Howell v. Tanner*, 650 F.2d 610 (5th Cir. July 13, 1981).

Defendant bears the burden of proving that the District of Columbia is clearly more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 11th Cir. 1989). It has not done so. Ordinarily, the plaintiff's forum choice should rarely be disturbed unless the balance strongly favors the defendant. *King v. Cessna Aircraft Co*., 562 F.3d 1374, 1381 (11th Cir. 2009). On balance, the government two-paragraph change of venue request (D.E. #28, at 14) falls in favor of the plaintiffs.

The government attaches no declarations from potential witnesses. The government doesn't cite any evidence that is unavailable in Florida or which cannot be brought here for trial. In *Dale v. United States*, the Middle District denied transfer of an FTCA action even though the alleged tort occurred entirely in another state. 846 F. Supp. 2d at 1257-59. Congress enacted § 1402(b) specifically to avoid forcing FTCA plaintiffs to litigate far from home, a policy choice recognized by the courts. *K.O. v. United States*, 651 F. Supp. 3d 331, 340 (D. Mass (2023)("This reflects a policy choice Congress made to not force individuals to travel outside their home district to bring FTCA suits.")

Plaintiffs, in contrast have attached as Exhibit 6 the declaration of Patrick Sullivan in which he states it would be very inconvenient for he and his wife to have this case transferred to Washington, D.C.

Merely shifting the burden of inconvenience from one party to another is not a consideration to outweigh a plaintiff's privilege to have the forum of their choice. *Robinson,* 74 F.3d at 260. Because the government merely seeks to shift inconvenience from itself to Florida residents, transfer should be denied.

The government hasn't met its burden of showing that the proposed alternative forum is more convenient. It's not even close. *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989).

***Conclusion:***

The defendant's motion to dismiss should be denied in its entirety.

Dated: November 13, 2026

Respectfully submitted,

Austin Carr, Esq.
*Board Certified Civil Trial Attorney*
Austin Carr, P.A.
6314 Engram Road
New Smyrna Beach, FL 32169
Telephone: 786-282-2882
Email: austin@austincarrlaw.com
Fla. Bar No. 440833

*/s/ Stephen Austin Carr, Esq.*